FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 18  PM 3: 54

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANINE TROSCLAIR WARD ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:  04-2552** |
| **LOUISIANA DENTAL ASSOCIATION, INC. ET AL.** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the motion of Janine Trosclair Ward and Peter Ward to remand the case to Orleans Parish Civil District Court is **DENIED**.  (Document #3.)

**IT IS FURTHER ORDERED** that the American Dental Association's motion to strike the affidavit of Dr. James Andrews is **DENIED**.  (Document #5.)

**IT IS FURTHER ORDERED** that the American Dental Association's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, is **GRANTED**.  (Document #4.)

**IT IS FURTHER ORDERED** that the claims against the Louisiana Dental Association, Inc. and Louisiana Dental Services, Inc. are **DISMISSED**.

### I. BACKGROUND

Janine Trosclair Ward had seven dental amalgam fillings containing mercury implanted

___ Fee_____
___ Process._____
 X  Dktd_____
___ CtRmDep._____
___ Doc. No._____

into her teeth from the mid 1960's through the late 1970's, beginning when she was fifteen years old.  In July 2002, Janine was diagnosed with high levels of mercury in her blood stream.  She received chelation treatments and had the seven fillings removed in December 2002.  In August 2003, Janine was diagnosed with a compromised immune system, Epstein Barr viral infection, and depression.  In January 2004, she was diagnosed with white lesion in the brain, a precursor to a "multiple sclerosis-like condition."  Janine has suffered seizures, fainting spells, three miscarriages, two dilation and curettage procedures, hair loss, extreme fatigue, dizziness, constant headaches, and memory loss.

Janine and Peter Ward (the Wards) filed a petition for damages in Civil District Court for the Parish of Orleans, State of Louisiana, against the Louisiana Dental Association, Inc. (LDA), Louisiana Dental Services, Inc. (LDS), American Dental Association (ADA), Unknown Manufacturing Companies, and Unknown Insurance Companies.  The Wards allege that cumulative exposure to mercury from dental amalgam fillings has caused Janine significant and preventable injury.  They allege that the manufacturers knew that the mercury could cause serious problems and failed to warn the Louisiana public of the danger and toxicity of this product.  The Wards further allege that the dental association defendants failed to warn of the danger of the product and endorsed, promoted, and encouraged the exposure to a highly toxic substance without adequate studies of the dangers of the fillings containing mercury.

The Wards allege that the amalgam manufacturers are strictly liable for their negligent actions under La. Civ. Code art. 2315 and 2316; the laws of contract; and products liability, La. Rev. Stat. 9:200.54 *et seq.*  Moreover, they allege that the LDA, LDS, and ADA are liable for

negligence under La. Civ. Code art. 2315 and 2316.

The ADA removed the case to federal court based on diversity jurisdiction, asserting that the LDA and LDS are improperly joined.[1] The Wards filed a motion to remand the case to Orleans Parish Civil District Court.

The ADA, by special appearance, moves to dismiss the action under Rule 12 of the Federal Rules of Civil Procedure on three grounds:  1)  Rule 12(b)(2) dismissal for lack of personal jurisdiction over the ADA, 2)  Rule 12(b)(3) dismissal for improper venue, and 3) Rule 12(b)(6) dismissal because the claim against the ADA is time barred.  The ADA also moves for a more definite statement under Rule 12(e) or alternatively, for a motion to strike the allegations of fraud and misrepresentation for failure to plead with particularity.

## II. DISCUSSION

### A. Motion to remand

### 1. Legal standard

Motions to remand to state court are governed by 28 U.S.C. § 1447(c), which provides in relevant part: "If at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  Improper joinder may be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff

---

[1]     In cases alleging improper joinder of parties, the consent of these codefendants for removal is not required because "removal in those cases is based on the contention that no other proper defendant exists." Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993).

to establish a cause of action against the non-diverse party in state court." Smallwood v. Illinois Central Railroad Co., 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*) (citing Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)). The test to determine whether the plaintiff is able to establish a cause of action against the non-diverse party is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. A court may predict whether the plaintiff has a reasonable basis of recovery under state law by conducting "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." Id. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." Id.

**2. Recovery against LDA and LDS**

The Wards allege that the LDA and LDS were negligent under La. Civ. Code art. 2315[2] and 2316[3] in the following respects:

> A. Failure to warn Ms. Ward of the dangers associated with dental amalgam fillings containing mercury,
> B. Negligent misrepresentation of the dangers associated with dental amalgam fillings containing mercury,
> C. Fraudulent concealment of the dangers associated with dental amalgam fillings containing mercury, and

---

[2]   Art. 2315(A) provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

[3]   Art. 2316 provides: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

D. Intentional misrepresentation of the dangers associated with dental amalgam fillings containing mercury.[4]

The Wards contend that the LDA and LDS owed dental patients, such as Janine, a continuing duty to disclose the toxicity of the mercury amalgam and to warn that the mercury could cause her physical harm.

Civil Code articles 2315 and 2316 afford broad protection for persons damaged by the intentional and negligent acts of others.  See Hobart Manufacturing Co., 367 So.2d 836, 839 (1979).  "[T]he failure to disclose the existence of a known danger, where one knows that another is relying on the appearance of safety, can constitute misrepresentation."  Bunge Corp. v. GATX Corp., 557 So.2d 1376, 1383 (1990).

Negligent or intentional misrepresentation "is subject to a duty-risk analysis."  Leon v. Moore, 896 So.2d 1073, 1076 (La. Ct. App. 2004).  To prevail on a claim under La. Civ. Code articles 2315 and 2316, a plaintiff must prove five separate elements:

> (1) proof that the defendant's substandard conduct was a cause-in fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

Bonin v. Ferrellgas, Inc., 877 So.2d 89, 94 (La. 2004).

---

[4]     In the motion to remand, the Wards state that the petition alleges facts which "create liability to Plaintiffs under the theories of negligence, intentional and fraudulent misrepresentation, and unjust enrichment."  There are no factual allegations in the complaint that the LDA and LDS engaged in conduct by which they were unjustly enriched.

"Duty is a question of law," and "the inquiry is whether the plaintiff has any law–statutory or jurisprudential–to support his claim." <u>Roberts v.Benoit</u>, 605 So.2d 1032, 1043 (La. 1992). "In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented." <u>Posecal</u>, 752 So.2d at 766. "The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving." <u>Id</u>.

In support of their claim that the LDA owed them a duty, the Wards cite the website of the LDA, which states its purpose as follows:

> The purpose of the Louisiana Dental Association (LDA) is to encourage the improvement and to protect the health of the public, to promote the art and science of dentistry, and to represent the interests of the members of the dental profession and the public it serves.

Plaintiffs' exh. B. The Wards also present the affidavit of Dr. James Andrews, a retired dentist from Delaware who practiced in Louisiana from 1958 through 1970, to attest to the LDA's knowledge and position on the dental amalgams. Specifically, Dr. Andrews describes a program of the Women's Auxiliary of a dental association, presumably the LDA, for the collection of scrap mercury amalgam dental fillings. Further, he addresses his personal interest in alternatives to mercury dental amalgam fillings after learning of the dangers to patients' health at a conference in Colorado in 1976. In that regard, Dr. Andrews states that colleagues in the dental

profession warned him that he would lose his license if the LDA learned that he was removing mercury dental amalgam fillings because of health concerns for his patients and that the "threat of license revocation caused many dentists to avoid discussing with their patients the risks associated with mercury dental amalgam fillings." Dr. Andrews states that to the best of his knowledge, "the Louisiana Dental Association distributed advisories about the safety and reliability of amalgams when the safety of mercury amalgam dental fillings began being questioned in the late 1970's." Dr. Andrews' affidavit contains no statements concerning the LDS.

The defendant presents the affidavits of William Edward Blackwell, the executive director of the LDA, and Dr. Clarence R. Corley, Jr., the senior vice-president and chief executive officer of the LDS. According to Blackwell's affidavit, the LDA is a nonprofit corporation organized under the laws of Louisiana and composed of a voluntary association of dentists practicing in Louisiana. The LDA does not manufacture, sell, supply, distribute or apply dental amalgam. Further, the LDA has not promoted dental amalgam as safe and has not offered "seals of acceptance" for any dental products. The LDA does not license dentists and is not responsible for education and supervision of dentists practicing in Louisiana. Moreover, the LDA does not communicate with dental patients or provide treatment to dental patients.

According to Corley's affidavit, the LDS is a for-profit Louisiana corporation, which manages royalty contracts of certain endorsed products and services available for purchase by members of the LDA. Corley states that the LDS has not undertaken a course of conduct concerning the promotion of dental amalgam or received any financial benefit. Moreover, the

7

LDS does not have any relationship or communication with dental patients or the supervision of dentists licensed in Louisiana.

Several jurisdictions have addressed the question of professional association liability based on the mercury amalgams under various causes of action.  The court is aware of no jurisdiction that has found a cognizable cause of action for liability against the ADA or the state dental associations.

In Hogan v. The Maryland State Dental Association, 155 Md.App. 556, 567 (Md.Ct.Spec.App. 2004),  the court affirmed the lower court's grant of a motion to dismiss on claims of fraud and deceit.  The plaintiffs had not alleged that either the Maryland State Dental Association or the ADA had made statements to them or that the plaintiffs had relied on such statements.  The Maryland Court of Special Appeals held that the plaintiffs did not allege the misrepresentation or concealment of any specific fact.

> Rather, appellants allege the existence of a dispute concerning the safety of implanted dental fillings containing mercury, which has been the subject of numerous studies.  The fact that appellee has taken the position that such studies have not shown the danger and that the fillings do not pose a significant health risk does not constitute fraudulent concealment.

Id.

In Hedley v. Dentsply Int'l, No. 02-0821 (M.D.La. Mar. 31, 2003)(Dalby, M.J.), the plaintiff alleged that the LDA failed to provide a warning about the dangers of mercury amalgams and passed ethical codes that prevent dentists from speaking about the toxicity of amalgam fillings.  The plaintiff admitted in her deposition that she had no information that the LDA had passed such an ethical code.  The LDA submitted an affidavit that the LDA has

8

adopted the ADA code of ethics, the LDA has not passed any ethical code concerning the members ability to speak to the toxicity of amalgam filling, and the LDA has not issued an advisory opinion on the ethical concerns in the practice of dental medicine. The magistrate judge recommended that the court find that the LDA was fraudulently joined. Id. The district court adopted the recommendation of the magistrate judge and disregarded the LDA as a party in the matter. Id. (May 28, 2003) (Brady, J.).

In Tolhurst v. Johnson & Johnson Consumer Products, Inc., No. 718228 (Cal. Sup. Ct. Jan. 26, 1993), the Superior Court for the County of Santa Clara concluded that public policy ought not to impose a duty on a voluntary trade organization such as the American Dental Association, which provides its members with publications consisting of medical research concerning mercury amalgams. The Superior Court reasoned as follows:

> To subject Defendant Association to liability would be, in this Court's opinion, contrary to public policy which the Court perceives to be the promotion rather than suppression of the free flow of scientific information directed to the practicing membership of the professional community to which the Defendants' publications are directed, i.e., professional dentists. Otherwise stated, to impose a duty/liability in this case would effectively suppress the publication of scientific literature, controversial or not, not only with respect to the members of this professional association but likely with respect to the publications of other professions such as physicians, attorneys, pharmacists, and accountants.

Id.

In this case, the court concludes that there is no identifiable statutory duty to warn or a special relationship between the LDA or LDS and the Wards from which a duty to warn arises. Moreover, the court agrees with the reasoning of the California court that it would be against public policy to impose such a duty. The affidavits of Blackwell and Corley indicate that there

9

was no relationship between the Wards and the LDA or LDS or any communication upon which the Wards relied. The LDA is a voluntary professional organization that serves the dentists who are members.[5] As to the LDS, the potential relationship to the Wards is more attenuated because the purpose of the LDS is to manage the royalty contracts of certain endorsed products and services available for purchase by the members of the LDA.

Moreover, Dr. Andrews statements concerning the LDA and the Women's Auxiliary do not concern any personal knowledge of a duty of the LDA to warn dental patients in Louisiana. Dr. Andrews' conclusory allegations concerning the fear of dentists in Louisiana of losing their licenses if they adopted certain practices does not implicate the LDA, which does not license or supervise dentists. Dr. Andrews' reference to advisories of the LDA are non-specific and inadequate to lend support to the Wards' allegations under articles 2315 and 2316.

Accordingly, the plaintiffs have not alleged a statutory or jurisprudential duty owed to them by the LDA or the LDS; therefore, the ADA has demonstrated that there is no possibility of recovery by the plaintiff against the LDS and the LDA in a cause of action for negligence. Because the LDS and LDA are improperly joined, the citizenship of the only named defendant, the ADA, is diverse from the Wards, and diversity jurisdiction is present.

Based on the pleadings and the supplemental memoranda requested by the court, the court finds that the Wards have not stated a claim against the LDS and LDA and *sua sponte* dismisses the claims against these defendants.

---

[5]     It is unclear whether the Wards's unnamed dentist was even a member of the LDA or received any communication from the LDA concerning the dental amalgam in question.

10

**B. Rule 12(b)(2) dismissal for lack of personal jurisdiction**

The ADA contends that the court lacks personal jurisdiction. The ADA argue that there is no specific jurisdiction because the plaintiffs have not alleged that the ADA has directed any activities to them in particular, and there is no general jurisdiction because the acceptance of dues by a national organization from members who reside in the forum state is not enough.

The Wards allege that there is general jurisdiction because the ADA engaged in systematic and continuous activities in Louisiana as the largest and oldest national dental association in the world. They argue that the ADA conducts education seminars throughout the country, publishes and distributes articles, functions as a repository for public information on dentistry, promotes the safety and effectiveness of dental products marketed throughout the United States, collects dues from Louisiana member dentists, published position statements on mercury amalgam and mercury waste from amalgam fillings, and profited from the placement of its seal on dental products sold in Louisiana. The Wards further contend that the ADA's website alone provides the basis for general jurisdiction.

A court may exercise jurisdiction over a nonresident defendant when that defendant has established sufficient "minimum contacts" with the forum state and the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." See Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2184 (1985).

Minimum contacts may be established under specific jurisdiction or general jurisdiction. When an action arises out of or is related to the defendants contacts with the forum, jurisdiction is commonly referred to as "specific jurisdiction." See Helicopteros Nacionales de Colombia.

11

  
S.A. v. Hall, 104 S.Ct. 1868, 1872 n.8 (1984).

> Where a forum seeks to assert specific jurisdiction over an out-of-state
> defendant who has not consented to suit there, [the] "fair warning" requirement is
> satisfied if the defendant has "purposefully directed" his activities at residents of
> the forum . . . and the litigation results from alleged injuries that "arise out of or
> relate to" those activities.

Burger King, 105 S.Ct. at 2182 (citations and footnotes omitted). Defendants can be subject to general *in personam* jurisdiction if they have "continuous and systematic" contacts with the forum state. Id. at 1872 n.9. The forum state need not have a direct interest in the action in order to exercise general jurisdiction. See Felch v. Transportes Lar-Mex Sa De Cv, 92n F.3d 320, 326 (5th Cir. 1996). "The notion of general jurisdiction is based on a concept of 'exchange.'" Bearry v. Beech Aircraft Corporation, 818 F.2d 370, 375 (5th Cir. 1987). General jurisdiction accommodates the sovereign interest of the state and the interest of the person in a fairly accessible forum. Id. "[B]y invoking the benefits and protections of the forum's laws, the nonresident defendant is seen as 'consenting' to being sued there." Id.

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985).

The Wards rely on Mink v. AAAA Development L.L.C., 190 F.3d 333 (5th Cir. 1999) for the proposition that the ADA's interactive website and retail sales of merchandise demonstrate a systematic and continuous attempt to sell and disseminate information in Louisiana. In Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002), the Court of Appeals clarified that the sliding scale in Mink "is not well adapted to the general jurisdiction inquiry." Mink adopted the reasoning of

12

Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997) in which only

specific jurisdiction was the issue. Id. at n.27.  The Court of Appeals stated that even repeated

contacts with forum residents by a foreign defendant may not constitute the requisite substantial,

continuous and systematic contacts required for a finding of general jurisdiction.  While a

corporation may be doing business with Louisiana, it is not doing business in Louisiana.  Id.

Although the maintenance of a website is a continuous presence in the world, the contacts must

be substantial.  Id.

The ADA presents the affidavit of Mary K. Logan, the Chief Operating Officer of the

ADA to demonstrate that the contacts with Louisiana are not substantial.  She states that the

ADA is a not-for-profit corporation, incorporated in the State of Illinois and dedicated to

promoting the art and science of dentistry.  The ADA has never been incorporated in, registered

or qualified to do business in the State of Louisiana and has not designated an agent for service

of process.  The ADA does not target any advertisement to the State of Louisiana.  It is a

voluntary association, and dentists are not required to be a member of the ADA in order to

practice dentistry in the State of Louisiana.  The ADA is part of a tripartite network made up of

the ADA, state dental societies, and local dental societies.  A dentist in Louisiana becomes a

member of the network by submitting an application and fee to the LDA, and the LDA forwards

a portion of the dues to the ADA.  In 2003, approximately 1.2% of ADA members were in

Louisiana.  The ADA does not market any product or service to Louisiana dentists or any other

persons and, specifically, has not designed, formulated, manufactured, distributed, marketed,

packaged, fabricated, compounded, promoted, advertised, sold, or placed into the stream of

commerce dental amalgams, including any amalgam containing mercury.  The ADA does not treat or examine dental patients or supply dental patients with any devices or materials for use in dental procedures.  The ADA has not issued any policies or positions to Louisiana dentists or residents or instructed or ordered Louisiana dentists to use any particular type of fillings.

The court finds that the ADA exercised its right to structure its affairs so as to shield it from the general jurisdiction of the courts in other states.  Id. at 375-76.  The ADA is not licensed to do business in Louisiana, and the tripartite association structure established for membership avoids the necessity of having employees in Louisiana.  See Murphy v. Aventis Pasteur, Inc., No. 02-2258 (N.D.Ga. Feb. 24, 2003)(holding that there was no general jurisdiction over the ADA in Georgia and dismissing the complaint).   Accordingly, general jurisdiction is not present.

Moreover, the Wards have not alleged facts to establish that the ADA purposefully directed its activities in Louisiana and that the alleged injuries arise out of those activities.  The Wards do not allege that the dentist who installed her amalgams was a member of the ADA or relied on information from the ADA in advising her about her dental amalgams.  The ADA is not alleged to have participated in the chain of events that led to the installation of Janine's amalgams; therefore, they have not established specific jurisdiction.

### III. CONCLUSION

The ADA  has demonstrated that there is no possibility of recovery by the plaintiffs against the LDS and LDA ; therefore, the LDS and the LDA are improperly joined.  Diversity jurisdiction is present, and the plaintiffs' motion to remand the case to Orleans Parish Civil District Court is denied.  Moreover, the court finds that the plaintiffs have not stated a claim

14

against the LDS and LDA and *sua sponte* dismisses the case against the LDS and LDA.

The plaintiffs have not established that the district court has either specific or general jurisdiction over the ADA; therefore, the ADA's motion to dismiss for lack of personal jurisdiction is granted.[6]

New Orleans, Louisiana, this _18_ day  of July 2005.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE

---

[6]    Because the court lacks personal jurisdiction over the ADA, it is not necessary to address the additional grounds for dismissal, the Rule 12(e) motion, or the motion to strike allegations of fraud and misrepresentation.